**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

UNITED STATES OF AMERICA,              )
                                       )
                 Plaintiff,            )
                                       )
       vs.                             ) Case No.
                                       ) 8:19-cr-348-WFJ-AAS
LUIS ARNOBIO DEL RIO-JIMENEZ,          )
                                       )
                 Defendant.            )


**SENTENCING HEARING**

Sam M. Gibbons United States Courthouse
801 North Florida Avenue
Tampa, Florida  33602
December 15, 2023
10:59 a.m.


BEFORE THE HONORABLE WILLIAM F. JUNG

UNITED STATES DISTRICT JUDGE


SHARON A. MILLER, CSR, RPR, CRR, RMR
Federal Official Court Reporter
Sam M. Gibbons United States Courthouse
801 North Florida Avenue, Room 13A
Tampa, Florida  33602
sharon_miller@flmd.uscourts.gov
813.301.5041


Proceedings recorded by machine shorthand
Transcript produced by computer-assisted transcription


UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

**APPEARANCES**

PRESENT ON BEHALF OF THE PLAINTIFF,
THE UNITED STATES OF AMERICA:

                MS. LAUREN STOIA, ESQ.
                United States Attorney's Office
                400 North Tampa Street, Suite 3200
                Tampa, Florida  33602
                (813)274-6000

PRESENT ON BEHALF OF THE DEFENDANT,
MELANIE MARSHALL:

                MR. GUY A. LEWIS, ESQ.
                MR. JEFFREY FOREMAN, ESQ.
                The Law Office of Guy A. Lewis, PLLC
                12585 SW 67th Avenue
                Pinecrest, Florida 33156
                (305)755-7880

MR. JAMES PLUNKETT - Spanish Interpreter

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

(Court in session at 10:59 a.m.)

(Interpreter sworn.)

COURTROOM DEPUTY CLERK:  Raise your right hand.

(Interpreter sworn.)

THE INTERPRETER:  Yes, I do.  James Plunkett, Spanish interpreter.

COURTROOM DEPUTY CLERK:  Thank you.  United States of America versus Arnobio Del Rio-Jimenez.  Counsel, if you could please state your appearances starting with the Government.

MS. STOIA:  For the United States, Lauren Stoia.  Good morning.

MR. LEWIS:  Guy Lewis and Mr. Jeffrey Foreman on behalf of Mr. Del Rio-Jimenez who's present in court and using an interpreter.

THE COURT:  Well, thank you.  And it's good to see you, Mr. Lewis and Mr. Foreman also.  Why don't we swear Mr. Del Rio-Jimenez, please.

COURTROOM DEPUTY CLERK:  Mr. Del Rio-Jimenez, please stand and raise your right hand.

(Defendant sworn through the interpreter.)

THE DEFENDANT:  Yes, I do.

COURTROOM DEPUTY CLERK:  Please state your name for the record.

THE DEFENDANT:  Luis Arnobio Del Rio-Jimenez.

COURTROOM DEPUTY CLERK:  Thank you.  You may be seated.

THE COURT:  All right.  Thank you.  Mr. Del Rio-Jimenez, in November of 2022, you entered a plea of guilty to Count Two of the Indictment and that charged you with conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States.  That was in violation of Title 46, U.S. Code, Title 21 U.S. Code.  I previously accepted your guilty plea and adjudged you guilty of that offense, so we're here now for your sentencing.

I received a very thorough and effective sentencing memorandum on your behalf that was filed by Mr. Lewis and Mr. Foreman and had some nice letters attached.  I've read that.  I appreciate it very much.

But let me ask you.  Have you had enough time to go over these matters with Mr. -- with your attorney Mr. Lewis and Mr. Foreman?

THE DEFENDANT:  Yes.

THE COURT:  Have they done everything for you that you wanted to have done on this case?

THE DEFENDANT:  Yes.

THE COURT:  All right.  You're satisfied with their services today; is that correct?

THE DEFENDANT:  Yes.

THE COURT: All right. Thank you. All right. So, you know, based on the Eleventh Circuit procedure here, we need to focus in on factually, numerically any objections by paragraph.

Mr. Lewis, have you any of those for the PSR?

MR. LEWIS: No, sir, no objections.

THE COURT: All right. And they call it PSR in the Middle District. I used PSI from the Southern District. I had to switch over to the lingo.

All right. Ms. Stoia, any objections to the PSR as drafted?

MS. STOIA: No, Your Honor.

THE COURT: All right. Well, there being none, I find those statements of fact and law as my order, and under the PSR, the Total Offense Level is a 39. That's a Criminal History Category I. There's a term advisory range of 262 to 327 months imprisonment, a five-year term of supervised release. There's a fine range of 50,000 to $10 million and $100 special assessment.

Why don't we hear from the Government then on any matters in allocution that you would like to share and then we'll hear from the Defendant.

MS. STOIA: Your Honor, I'll begin by saying that I am bound by the terms of the plea agreement to not object to a request for a sentence at the low end of the guidelines range.

I do think that a sentence at the low end and nothing below that is appropriate.

I don't think for the variance -- further variance is appropriate here.  Looking at the factors that we consider in 3553(a), looking at the nature and circumstances of the offenses, this Defendant sat atop a transnational drug trafficking organization.

We can tell from the facts laid out in the plea agreement that when there were issues that arose within the drug trafficking organization, everyone called the Defendant for instructions as to how to proceed.

I'd also note that while it states in the Defendant's sentencing memorandum that he entered the conspiracy around 2015, I think that somewhat defies logic to believe that, you know, that a 50 some year old man would enter a conspiracy at the top of the proverbial food chain.

He's also responsible for the detachment of thousands and thousands of kilos of cocaine, and I was struck as I read the PSR and the sentencing memorandum about his so-called efforts with respect to, you know, providing drug treatment to people in Colombia and counseling, and I think that, you know, if the Defendant was actually concerned with that, then he probably would not have been a drug kingpin to begin with.

I also would like to point out that the Defendant

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

did receive a high school diploma.  He is an educated man, and by all indications the man is of intelligence and capability. And so you know what?  He's obviously, and just to point out the obvious, distinguishable from a lot of other defendants that we see in this court, you know, those coming from, you know, similar abject poverty but who did not have the opportunities that this Defendant has had, and so for all of those reasons, you know, I think that a sentence of 262 months and nothing below that is appropriate here.

THE COURT:  Well, thank you.  I appreciate that.

Mr. Lewis, we'd be happy to hear from you, Mr. Foreman and, of course, Mr. Del Rio-Jimenez if he wishes to speak.  He's not required to or impaired if he speaks only through counsel.

MR. LEWIS:  Thank you.  May it please the Court. Judge, I have about ten minutes hopefully or less worth of --

THE COURT:  Take your time.

MR. LEWIS:  Thank you very much.

We have filed a memorandum, and I appreciate Your Honor's careful and thorough analysis of it.  I don't quarrel with much of what the prosecutor says, though I have a different, based on my experience, sort of a different flavor to it as well as having had a chance to review some of the materials including the letters speaking of family, speaking to Mr. Del Rio-Jimenez and frankly speaking to the prior

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

prosecutor, so with all due respect, we just have a slightly different perspective on what seems fair and reasonable for a 68-year old man who likely will spend the rest of his life in custody and in prison.  And I say that with all due respect to the prosecutor and her position.

Judge, we have, if I could introduce first, three individuals who were present.  I've spoken to many, many others through his attorney, his Colombian attorney Doctor Alex Polania who's present in court.  He's been working with me throughout and extraordinarily helpful in terms of investigation and witnesses and things like that.

Many, many were in Colombia and, of course, just couldn't come for various reasons, not because they didn't want to, but certainly the outpouring of support for their brother, their cousin, their grandfather, their father, on and on has been extraordinary.

Also in Court is his daughter Yara Del Rio Pasos. She's been supportive throughout.  Both her and her brother Anderson your Honor will recall was a co-defendant in the case as well who has completed his period of incarceration and has returned to Colombia.

And lastly his grandson Arrano Gutierrez who has asked -- Mr. Del Rio has asked and Mr. Gutierrez has asked to make just very, very short remarks to the Court to talk about their -- his grandfather and certainly will give his

perspective.

Judge, these are very difficult decisions I know for Your Honor, and I know Your Honor thinks very, very long and hard about it.

I wanted to through -- I appreciate your recognizing the submission that we made.  Frankly, I probably spent -- Mr. Foreman mainly, but I spent more time on this than I do frankly on any other -- some other cases that I work on because it was challenging, not so much because I wanted to take the crime to which he's pled guilty and put it in a perspective.  I spend very little time doing that, and instead really tried to spend time letting you know who the man was, what his background was, and most certainly she's correct.  He didn't just all of a sudden wake up one morning and have friends that were involved in the drug business.

He was born and raised in Colombia.  As the memo indicates, he worked hard all his life trying to support his family.  To suggest that for me not to recognize and to suggest Your Honor that poverty and crime didn't play a role in it, that's not why I'm here.  I'm here to say that he was born in it.  He tried to get out of it.  He tried to take care of his family and there is no one, no one in this courtroom more ashamed and more regretful and more sorry than this 68-year old man, who if he could snap his fingers, if he could perform a miracle would change those decisions.

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

There is no question about that, and the memo itself and the writings I think give a different, certainly a different perspective in what the Government has and I think hopefully will help Your Honor make what is a very, very difficult decision.

The memo, it talks about his background, how he was raised, how he tried his best and frankly how in many instances he failed.  He failed with his family.  He failed with work.  He's told me that breaking down and trying to understand the decisions that he made and, again, expressing just regret upon regret, so it's a tragedy.  It's a tragedy from his young age, and it will be a tragedy today no matter frankly what Your Honor sentences him to.  And he understands, Judge.  He's not here -- we've talked about this.  He's not here under any mis-illusion that he's not going to get a very, very lengthy sentence.  He understands that.  He understands that, and I myself have looked at the other sentences that Your Honor has handed down in this case and have gone over that with Mr. Del Rio, so he sees it and he's a realist.  He's done his best as a result to cooperate.

We had several different sessions with Mr. Ruddy and the agents, I think very helpful.  He's done everything he can to answer questions.  We are not here on a 5K.  I understand that, but certainly we hold out hope for the potential of a Rule 35.  I've had cases -- I've explained to him.  I've had

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

cases that have come to pass years later as a result of circumstances that one could not guess as we sit here today, one particular that occurred in this very district where the gentleman was sentenced to 35 years in North Carolina, cooperated on a case here in the Middle District of Florida and ultimately went back to the judge in North Carolina who sentenced him to time served on I believe it was a 14-year sentence. That at the time oddly enough Ed Ron was the acting U.S. Attorney, former AUSA in the Southern District of Florida and was the active U.S. attorney.

So he understands his situation. He understands his circumstances. As I say, he regrets it and he wishes he could change it. He has written out for me, Your Honor, both a letter that he would like to -- a statement that he would like to make to Your Honor, and in addition he's asked me if his grandson who's present has through his grandfather has asked me to ask you if you would permit him to make a short statement, and with that I'll have just a few minor other remarks. That will be our presentation.

THE COURT: Thank you. Glad to hear it.

MR. LEWIS: Thank you, Your Honor. First then, I would ask Mr. Gutierrez to come up and speak to Your Honor.

THE COURT: Yes. Just talk right in this mic. Mr. Gutierrez, give us your name and tell us what's on your mind.

MR. GUITERREZ:  Hello, Your Honor.  My name is Arrano Gutierrez.  Thank you for listening to me today.  It's very important for me to be able to address you with great respect, like that through me, you can see over here my grandfather that you have not been able to appreciate.

I'm aware of my grandfather's situation, and I feel really sad and embarrassed that he broke the laws of the United States.

I want you to know that as a grandfather he has been the best.  Thanks to him, the first generations are university students in our family have been able to graduate.  He has always taught us to care about the needs of our fellow human beings and to respect our elders, although it may seem ironic to follow and respect the rules of society.  I always saw how he worked hard to help families that were not his own, have food to eat, and as an American citizen have been able to enjoy the benefits of a country like ours.

I have also been able to witness in Colombia there's so many needs, not many opportunities for many citizens that help with everything for them.  From him I can see how he was in charge of the maintenance on more than a dozen elderly citizens that were abandoned and the recovery of street residents.  He always made sure that at Christmastime the children's needs, they have something to eat and a Christmas gift.  I know it may not seem like much for many people, it

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

made a big difference, at least for me it did, and I know it did to many of my family members.

In my heart there will always be a pleasant memory that at the age of six on a vacation, I went to visit my grandfather. We found a puppy that was abandoned and in very bad condition. He allowed me to bring her with me and he taught me how to take care of her. Today she is called Soya. After that he allowed me to pick up dogs that need help, and for me he's the best grandfather because when I was not there he took care of them for me because as he knew that I loved them.

I know that these past four years away from his family have felt like an eternity because he's missing his first great granddaughter, Guadalupe being born and growing up, seeing one of his granddaughters get married. And I'm also aware that because of his decision he'll miss many more special dates with his family; however, I come before you to beg that you please grant him mercy on his sentence, not because he deserves it but out of consideration for his family because it hurts us a lot not to be able to share with him so many special moments because we know that at his age and with his health problems there are not many years that we will be able to share with him after he is sentenced, and that hurts us deeply.

There's so many things I would like to be able to

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

share with him, like my graduation, and for the young people in our family, his discipline and advice are very necessary.

I can continue to say many other things, but I don't want to abuse your time; however, I want to finish with asking with all my heart, Ms. Judge, to have grace, not just for my grandfather but on his grandchildren to be able to enjoy his company at some point and for the opportunity for my grandfather to repair his actions through his projects and repay his debt to society to make up for the damage that he has caused.  Thank you very much for listening to me.

THE COURT:  Thank you, Mr. Gutierrez.  And are you -- what level in school are you?

MR. GUITERREZ:  I'm in eighth grade.

THE COURT:  All right.  So you're headed to high school in Kissimmee.  Where at?

MR. GUITERREZ:  I am in Creation World Village School.

THE COURT:  Where is that?

MR. GUITERREZ:  In Celebration, Florida.

THE COURT:  In Celebration.  Okay.  All right. Well, that was from the heart and I appreciate it very much. Thank you for your time.

MR. GUITERREZ:  Thank you, Your Honor.

MR. LEWIS:  Before Mr. Del Rio speaks, Judge, and, again, I know you have read everything front to back, but I

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

was struck by one other letter that was submitted.

When lawyers prepare examples of the kinds of letter that they should write, I didn't -- I told these family members and friends just to write from their heart, and I was struck by one that I just want to point out, his daughter Natacha Del Rio Velez, and it's in the package as well where, again, she talks about the things that Mr. Gutierrez says indicating, for example, in the middle of the letter "I'm aware of the legal situation my father is in and he's been completely open and candid with his family and knows that he can always count on me and that I will always give him all my support and love and gratitude for a good father he's been and above all because I know how much he needs us," and she proceeds to ask for your mercy.

I think Mr. Del Rio-Jimenez has a short statement to read.

THE COURT:  Just, of course, Mr. Plunkett will say it, so he needs to -- he can stand or sit, whatever he wants.

THE DEFENDANT:  Dear, Judge.  I want to apologize to you and to the Government of the United States.  I know that what I did was wrong, and I am sorry from the bottom of my heart.  With genuine remorse I ask that you forgive me.  I also ask my family for forgiveness because they have supported me and they continue being optimistic but they have suffered greatly during this horrible nightmare.

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

Your Honor, I want you to know that I am not only sorry but also that I feel deep shame. I have set a bad example to my children, grandchildren, friends and my country. Your Honor, I really hope that you could find it in your heart to forgive me.

I also want to thank the Government for allowing me to cooperate. This has helped me a lot because I know that I can contribute in the fight against drugs. You can count on my cooperation if that can help compensate the harm that I have caused.

Finally, with defeated and sorrowful heart, I implore you, Your Honor, that you have mercy on me because the strength to keep on going is failing.

THE COURT: All right. Thank you. I appreciate those comments. Mr. Lewis, go ahead.

MR. LEWIS: Lastly, Your Honor, three requests that we lay out in our papers. Number one, I'd ask that Your Honor allow him credit for time served from the time he was arrested November 24th, 2019 pursuant to 18 U.S.C. 3585. He was arrested -- as the PSR indicates he was arrested November 24th, 2019 and detained in Picota prison in Colombia.

Number two, he's indicated to me that he thinks that residential drug treatment programming in jail, RDAP what it's often called, counseling would be very helpful to him, and Your Honor's recognition of that. Lastly, to the extent -- he

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

knows these are recommendations, Judge.  I told him that.

Lastly, to the extent that he can be near his family here in Florida, Kissimmee, he would ask that Your Honor recommend to BOP that he be incarcerated in a facility somewhere in the state of Florida or the southeast.

THE COURT:  You know, the closest one is Coleman. They have a camp which I don't think he would get in.  There's a low.  He might get into low.  There's a medium.  Do you want me to say Coleman?  It's about probably I'll say 70, 85-minute drive from Kissimmee north.

MR. LEWIS:  Yes, Judge.  I had a doctor who recently finished his time up there and having visited several times, it would be a perfect facility for Mr. Del Rio, who by the way has -- his time in custody here in Pinellas, although very difficult, has been exemplary, so thank you very much for your consideration.

THE COURT:  So we'll certainly do RDAP at Coleman. Now, the time served, it should happen automatically and if it doesn't then you need to file a motion.

MR. LEWIS:  Judge, thank you for your time and your patience with us in this case.  It's taken me a while to get to this point, not because of anything the Defendant, but there's just -- it was a big case and I appreciate your time and your consideration.

THE COURT:  All right.  Okay.  Does that conclude

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

the defense comments?

MR. LEWIS:  Thank you very much, Judge, that concludes our presentation.

THE COURT:  So the Court's asked the Defendant why judgment shouldn't be pronounced and having heard from the Defendant and reviewed the pleadings and the letters which I perceived very much, let me say this much.  You know, I practiced law in this state for 40 years, criminal law -- well, 35, five years as a judge, criminal law defense prosecution.

Mr. Lewis -- Mr. Del Rio-Jiminez, Mr. Lewis may be the best attorney in the state of Florida, so when lawyers like him come into a courtroom, they bring experience, a reputation, you know, that developed over decades, a lot of Latin words, gravitas, heaviness based on that reputation, and what lawyers like him do carries a lot of weight when they cross into those doors.

It means a lot, but he's not a miracle worker and you didn't give him anything to work with, so I hope you get a Rule 35.  I'm kind of reminded a line from a famous movie where the older gentleman's name was Hymen Roth in the movie *The Godfather,* he was lamenting what has happened.

He said this is the business we have chosen and he was towards, you know, the final lap, final -- not much -- I'm just about your age, so I'm not insulting you.  You and I are

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

pretty close in age, kind of lamenting that and, you know, as I just said, this is the business we've chosen.

So I hope you get a Rule 35, and the Government gives them, so keep working on that, but we're not -- we're certainly not there yet, so pursuant to title -- you know, I say this one other thing about these cases.

There's a lot of sympathy from me for these pitiful creatures that get on these boats. Man, these guys are so poor, and they go way out in the Pacific, I mean 300 miles. I know a lot about boats. I've owned one. I've sunk one, you know, not intentionally. I really have a lot of pity for them. We don't know how many of them caught -- I mean these things are weighed, so heavily-weighted. One wrong wave, that thing is going over. We don't know how many of them drown. Who knows. So, you know, whatever you want to call it, empathy or sympathy in these cases, at least for me, it's usually directed to the poor, poor people on end of this. Think of what you got to put up to go 300 miles in the Pacific. You go ten miles out in the Gulf, it's scary in one of these little boats.

So anyway, that empathy and sympathy unfortunately is not particularly present in the history we have here.

So anyway, pursuant to 3551 and 3, it's the judgment of Mr. Del Rio-Jimenez is committed to the custody of the Bureau of Prisons for a low end guideline sentence, 262

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

months.  That's the low end, bottom of the guideline.

Upon release from imprisonment -- you can get below that on a Rule 35.  I hope it happens for you.

Upon release from imprisonment, you'll have to serve a five-year term of supervised release.  While on supervised release, you will have to comply with the mandatory and standard conditions adopted by the Court in the Middle District of Florida which can be found at 5D1.3(a) and (c) of the sentencing guidelines.

In addition, you'll have to comply with the following special conditions.  If you're deported, you may not re-enter the United States without the express permission of Governmental -- appropriate Governmental authority.  Having been convicted of a qualifying felony, you'll have to cooperate in the collection of DNA as directed by the Probation Office.  The mandatory drug testing requirements of the Violent Crime Control Act are suspended; however, you must submit to random drug testing not to exceed 104 per year.

Based upon the financial status, the Court waives the imposition of a fine.  There's $100 assessment which is due immediately.

Upon considering the advisory guidelines and all of the factors identified in 3553(a)(1)-(7), I find the sentence imposed is sufficient but not greater than necessary to comply with the statutory purposes of sentencing.

I've accepted the plea agreement because I'm satisfied that it adequately reflects the seriousness of the offense behavior and will not undermine the statutory purposes of sentencing.

Count One of the Indictment is dismissed pursuant to the plea agreement.

Having pronounced sentence, Ms. Stoia, any objections beyond those previously noted?

MS. STOIA:  No, Your Honor.

THE COURT:  Mr. Lewis, any objections beyond those previously noted?

MR. LEWIS:  No, sir.

THE COURT:  Well, we'll make those recommendations. And, again, if it turns out there's no time served, then file a motion, but my experience, they follow the statute and that includes, as I understand it, they follow the statute on the time spent in extradition as credited.  That's been my experience.  I don't think you're going to have that problem.

Mr. Del Rio-Jimenez, to the extent permitted by your plea agreement, you have a right to appeal from the judgment and sentence within 14 days.  Failure to appeal would be such a waiver.  Mr. Lewis and Mr. Foreman, if there is such grounds for appeal, they'll take care of that.  The Government may also appeal.

If for some reason you can't afford a lawyer, you'll

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

have to file what's called an indigency affidavit, pauper's affidavit and I'll review that.  Your lawyers will take care of that.

Anything else, Government?

MS. STOIA:  No, Your Honor.

THE COURT:  Anything else, Counsel?

MR. LEWIS:  No, sir, Judge.  Thank you.

THE COURT:  Thank you.  Good luck, sir.

(Court adjourned at 11:31 a.m.)

UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION

UNITED STATES DISTRICT COURT   )

                               )

MIDDLE DISTRICT OF FLORIDA     )


          I, SHARON A. MILLER, Official Court Reporter for the United States District Court, Middle District of Florida, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographic notes taken by computer-aided transcription taken in the above-entitled cause by the undersigned and that the transcript format is in conformance with the regulations of the Judicial conference of the United States.

/S/Sharon A. Miller, CSR, RPR, CRR, RMR

Official Court Reporter


UNITED STATES DISTRICT COURT ~ FLMD ~ TAMPA DIVISION